813 So.2d 122 (2002)
Steven G. GLUCKSMAN and Steven G. Glucksman, P.A., Appellants/Cross Appellees,
v.
PERSOL NORTH AMERICA, INC., and Robyn Godur and Stacey Godur, as surviving shareholders and Trustees of the assets of Persol North America, Inc., and Robyn Godur and Stacey Godur, individually, Appellees/Cross Appellants.
No. 4D00-3130.
District Court of Appeal of Florida, Fourth District.
February 27, 2002.
Rehearing Denied April 29, 2002.
*123 Eric G. Belsky of Johnson, Leiter & Belsky, Fort Lauderdale, for appellants.
Kenneth R. Drake of Demahy Labrador & Drake, P.A., Coral Gables, for appellees.
CLARK, NIKKI ANN, Associate Judge.
This case arises from a legal malpractice action brought by appellees/cross-appellants, Persol North America, Inc., Robyn Godur and Stacey Godur, as shareholders, (collectively, Persol North America) against former counsel, appellants/crossappellees Steven G. Glucksman and Steven G. Glucksman, P.A., (collectively, Glucksman) for failure to bring a cause of action within the time prescribed by the applicable two-year statute of limitations. The underlying action from which the instant legal malpractice action arose is another legal malpractice action filed by Glucksman on behalf of Persol North America against its former counsel, George Lott and Lott & Levine, P.A. (collectively, Lott). The following three distinct legal disputes are significant to the determination of the issues presented on appeal: Persol North America v. Persol Italy, Persol North America v. Lott (the underlying legal malpractice action), and the instant case, Persol North America v. Glucksman.
Persol North America v. Persol Italy: The two companies entered into a distributorship agreement pursuant to which Persol North America would be the exclusive distributor of eyeglasses manufactured by Persol Italy. The distributorship agreement contained a clause which allowed Persol Italy to unilaterally terminate the distributorship agreement with Persol North America in the event Persol Italy was sold or transferred. The termination clause became consequential when on April 18, 1995, Persol Italy informed Persol North America that a controlling interest in Persol Italy had been sold and Persol Italy was immediately terminating the distributorship agreement. This dispute over the termination of the distributorship agreement concluded with a written settlement agreement between the two companies that was executed on June 1, 1995.
Persol North America v. Lott: Lott was retained by Persol North America to prepare and negotiate the distributorship agreement with Persol Italy. Persol North America sued Lott for legal malpractice over the termination of the distributorship agreement claiming that it had instructed Lott to insert a clause in the agreement that would prohibit termination of the agreement in the event Persol Italy was transferred or sold. Lott denied that he committed malpractice, maintaining that Persol North America signed the distributorship agreement fully aware that the termination clause was in the agreement and that indeed the termination *124 clause was an integral part of the contract negotiations. The critical issue in this dispute was whether Lott had improperly allowed the termination clause to remain in the distributorship agreement. The lawsuit was filed in this dispute on May 9, 1997. (Persol North America v. Lott was settled in June 1998. A month later, the instant suit against Glucksman was filed.)
Persol North America v. Glucksman: Glucksman was the attorney who represented Persol North America in the underlying suit against Lott. The instant suit was based solely on the allegation that Glucksman was negligent and committed legal malpractice by not filing the Persol North America v. Lott lawsuit within the applicable two-year statute of limitations period. Glucksman filed a Motion for Summary Judgment arguing that the suit against Lott was timely filed within the two-year statute of limitations period. At the hearing on the motion, the parties agreed that the sole issue was when the statute of limitations began to run. The trial court ruled that the statute of limitations began to run on April 18, 1995, the date the distributorship agreement was terminated. The trial court reasoned that the termination date triggered Persol North America's discovery of the legal malpractice. Accordingly, the trial court denied Glucksman's Motion for Summary Judgment.
Following a jury trial, the trial court entered final judgment in favor of Persol North America. Glucksman appeals from the trial court's denial of its Motion for Summary Judgement and from the final judgment, asserting the statute of limitations began to run on June 1, 1995, the date the final written settlement agreement was executed between Persol North America and Persol Italy. Persol North America cross-appeals the trial court's denial of its motion for a directed verdict with respect to Glucksman's comparative negligence defense.
The parties agree that there are no genuine issues of material fact with regards to the facts needed to determine when the statute of limitations began to run in the underlying action against Lott. Thus, the trial court's decision is reviewed de novo. See Holl v. Talcott, 191 So.2d 40 (Fla.1966) (where there are no issues of material fact, the correctness of a summary judgment is reviewed as a question of law).
We disagree with the trial court and hold that the statute of limitations on Persol North America v. Lott commenced on June 1, 1995, when Persol North America suffered "redressable harm" at the conclusion of the Persol North America v. Persol Italy dispute.
The statute of limitations governing legal malpractice actions is section 95.11(4)(a), Florida Statutes (1997). See Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1325 (Fla.1990). Section 95.11(4)(a), provides in pertinent part:
(4) Within two years.
(a) An action for professional malpractice, other than medical malpractice, whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence.
A legal malpractice cause of action accrues not necessarily when the client first suspects that the attorney might have committed malpractice, but rather, when the client incurs damages at the conclusion of the related or underlying judicial proceeding or, if there are no related or underlying judicial proceedings, when the client's right to sue in the related or underlying proceeding expires. See Blumberg *125 v. USAA Cas. Ins. Co., 790 So.2d 1061, 1065 (Fla.2001) (citing Peat, Marwick, 565 So.2d 1323).
In Peat, Marwick, the Lanes retained Peat Marwick as their accountants to provide tax advice and to prepare their federal income tax returns. 565 So.2d at 1324. Peat Marwick advised the Lanes to invest in a limited partnership. Id. The Lanes invested and then, on the advice of Peat Marwick, claimed deductions on their income tax returns for losses sustained by the partnership. Id. On March 17, 1981, the IRS sent the Lanes a "Ninety-Day Letter" or Notice of Deficiency, advising the Lanes that there were deficiencies in their tax returns due to the claimed deductions for the partnership losses. Id. The deficiency letter advised the Lanes that they had the option to appeal the IRS's deficiency determination in the United States Tax Court. Id. Peat Marwick advised the Lanes that the deductions were proper and that they should challenge the deficiency determination in tax court. Id. The Lanes followed that advice and filed their challenge on June 8, 1981. Id. Thereafter, the Lanes agreed to the entry of a stipulated order, dated May 9, 1983, requiring them to pay a tax deficiency amount. Id.
On February 22, 1985, the Lanes filed a malpractice action against Peat Marwick. Id. Peat Marwick moved for summary judgment, arguing that the two-year statute of limitations began to run on March 17, 1981, when the IRS sent the Ninety-Day Letter, and that the malpractice suit was time-barred. Id. Although the trial court agreed and entered summary judgment in favor of Peat Marwick, the third district held that the trial court erred in its ruling regarding the commencement of the statute of limitations, finding that the Lanes did not suffer redressable harm until the tax court entered judgment against them because until that time, "the Lanes knew only that Peat Marwick might have been negligent." Id. at 1325.
The Florida Supreme Court affirmed the third district's decision. Id. The court recognized that the applicable statute of limitations is set forth in section 95.11(4)(a), Florida Statutes, and that "[g]enerally, a cause of action for negligence does not accrue until the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury or the negligent act." Id. The court reasoned that an accounting malpractice was similar to a legal malpractice action and stated:
In this case, the Lanes chose to appeal the IRS's determination to the United States Tax Court, in accordance with the advice given them by Peat Marwick. We find, consistent with the holdings of numerous attorney malpractice cases, that until their tax court action was final, the Lanes did not have an action for malpractice. We reject Peat Marwick's contention that an IRS deficiency determination conclusively establishes an injury upon which to base a professional malpractice action. If we were to accept that argument, the Lanes would have had to have filed their accounting malpractice action during the same time that they were challenging the IRS's deficiency notice in their tax court appeal. Such a course would have placed them in the wholly untenable position of having to take directly contrary positions in these two actions. In the tax court, the Lanes would be asserting that the deduction Peat Marwick advised them to take was proper, while they would simultaneously argue in a circuit court malpractice action that the deduction was unlawful and that Peat Marwick's advice was malpractice. To require a party to assert these two legally *126 inconsistent positions in order to maintain a cause of action for professional malpractice is illogical and unjustified. Until the tax court determination, both the Lanes and Peat Marwick believed that the accounting advice was correct; consequently, there was no injury. To hold otherwise would mean that an accountant's client would have an action for malpractice as soon as the client received a "Ninety-Day Letter" from the IRS. That result is contrary to common sense and reason.
Id. at 1326. The court held that "under the circumstances of this case, where the accountant did not acknowledge error, the limitations period for accounting malpractice commenced when the United States Tax Court entered its judgment." Id. at 1327.
In Blumberg, the Florida Supreme Court reiterated that a negligence/malpractice cause of action accrues when the client incurs damages at the conclusion of the related or underlying judicial proceeding, or if there are no related or underlying judicial proceedings, when the client's right to sue in the related or underlying proceeding expires. 790 So.2d at 1065.
Analogous to the circumstances in Peat Marwick and Blumberg, Persol North America retained Lott to prepare and negotiate a distributorship agreement with Persol Italy. Based on Lott's advice, Persol North America entered into the agreement with Persol Italy. On April 18, 1995, Persol North America received a letter of termination from Persol Italy, advising that the distributorship agreement was being terminated because Persol Italy had been sold. Persol North America sought the advice of a new attorney on whether the distributorship agreement could be terminated. The new attorney advised Persol North America that the agreement could be terminated pursuant to a provision in the agreement, but in communications with Persol Italy the attorney openly disputed the appropriateness of the termination. Thereafter, Persol North America and Persol Italy agreed to a settlement of their dispute, which was finalized and executed on June 1, 1995. On May 7, 1997, Glucksman filed the Persol North America legal malpractice action against Lott. In his answer, Lott contended that the statute of limitations began to run on the date Persol Italy's termination letter was received, April 18, 1995, and that the malpractice suit was time-barred. As a result, Glucksman withdrew as Persol North America's counsel and the dispute was settled.
Following the Peat, Marwick analysis, Persol North America did not suffer redressable harm until its dispute with Persol Italy concluded because until that time, Persol North America knew only that Lott might have been negligent. Prior to that time, Persol North America suspected Lott had been negligent. Lott denied he committed malpractice and the only way the dispute between Persol North America and Persol Italy was going to be resolved was either through a judicial proceeding or with a settlement. There was no injury until the Persol North America and Persol Italy dispute was resolved. The dispute was never litigated, so there was no related or underlying judicial proceeding to determine whether the distributorship agreement could be terminated as of right. However, upon the June 1, 1995 execution of the out-of-court settlement between the disputing parties, Persol North America's right to sue Persol Italy expired.
The cause of action against Lott accrued when the underlying dispute between Persol North America and Persol Italy came to an end with the execution of the settlement agreement on June 1, 1995. The suit against Lott (Persol North America v. *127 Lott) was filed on May 8, 1997, within two years of the date the cause of action accrued. Accordingly, the suit was timely filed within the time prescribed by the applicable two-year statute of limitations. See § 95.11(4)(a), Fla. Stat. (1997). Because the legal malpractice action against Glucksman was solely based on the alleged failure to timely file the cause of action against Lott and the cause of action was timely filed, the trial court reversibly erred when it denied Glucksman's Motion for Summary Judgment, allowed the case to proceed to a jury trial and entered final judgment in favor of Persol North America.
Because this case is reversed on the statute of limitations issue, we decline to address the other issues raised on appeal and cross-appeal.
Reversed and remanded for entry of a final judgment in favor of Glucksman.
STONE and STEVENSON, JJ., concur.