FARMER, Judge.
The trial judge determined that the complaint in this action alleging legal malpractice showed clearly that the statute of limitations had begun to run more than 2 years before the action was commenced. We disagree and reverse her order dismissing the complaint.
The facts alleged in the complaint are that the defendants (counsel) represented plaintiff (client) to amend a declaration of covenants on property that plaintiff was purchasing. The purpose of the legal services was to redraw lots on a plat to reduce 9 lots to 4 and to make clear that client’s liability for assessments and dues on the lots purchased would accrue only when a certificate of occupancy was issued after construction on each lot. The amendment to the declaration was prepared and filed by counsel in February 1990.
One year later, the association sent client a letter assessing dues on all lots. At a meeting with the association, members of the association suggested a further amendment to the declaration which would cure the problem. Counsel then advised client to do so. Several months later, in November 1991, the circuit court ruled in an action involving the association and another owner that the amendment was invalid. Client commenced his action against counsel just under two years from that circuit court decision.
Counsel moved to dismiss the complaint under rule 1.140(b)(6), arguing that the face of the complaint showed that the statute of limitations had already run when the suit was commenced. The court granted the motion, saying that the action was dismissed with prejudice. This appeal followed.
Client relies primarily on Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990), in support of his argument that it was not until the circuit court ruled in November 1991 invalidating the amendment that the clock starting ticking on the limitations issue. In Peat Marwick, the client retained the accounting firm to prepare income taxes for several years. Peat Marwick prepared returns that claimed deductions from partnership losses. Peat Marwick had earlier advised the client to invest in the partnership.
A few years later, in 1981, client received a notice of tax deficiency from IRS challenging the deductions. Peat Marwick advised client that there was a sound basis for the deductions. When the IRS later denied the client’s petition to redetermine the assessed tax deficiency, client filed suit in the United States Tax Court. Later, client entered into a stipulation with the IRS for the entry of a settlement order, and the tax court entered the order that day.
Client sued Peat Marwick for malpractice within 2 years from the date of the tax court order. On appeal from a dismissal of the action on limitations grounds, the third district reversed upon a holding that the cause of action does not arise until the existence of redressable harm has been established. Client did not suffer redressable harm until the tax court entered judgment because, until then, there was only the mere possibility that Peat Marwick had been negligent. On further appeal to the supreme court, the decision was approved. Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990).
The court noted that, until the tax court action was final, client did not have a cause of action for malpractice. Hence, the court rejected Peat Marwick’s contention that the IRS notice conclusively established an injury upon which to base a professional malpractice action. Rather, the court explained that there was no injury until the tax court had determined that the deductions were improper and that additional taxes were owed.
The court distinguished Sawyer v. Earle, 541 So.2d 1232 (Fla. 2d DCA), cause dismissed, 545 So.2d 1368 (Fla.1989), and its *1136 own earlier holding in Edwards v. Ford, 279 So.2d 851 (Fla.1973). In both of those cases, the plaintiff knew of the injury but simply failed to file suit. In Sawyer client hired attorney to represent him in a bar disciplinary proceeding in August 1980. The referee recommended an 18-month suspension. In March 1981, client replaced the attorney with new counsel. In June 1982, the supreme court entered a final order disciplining client in accordance with the referee’s recommendation.
In June 1984, client filed a malpractice action against his original counsel. The trial court dismissed the action on statute of limitations grounds. The second district affirmed, finding that client’s cause of action had accrued when client dismissed counsel and obtained a new lawyer. Client had claimed that he suffered monetary damages from the alleged malpractice that occurred in 1980 and hired a new attorney because of that malpractice. The district court noted that this demonstrated that client had discovered his redressable harm at that time. A mere inability to determine the full extent of his damages then did not prevent the limitations period from beginning.
In distinguishing its facts from those in Sawyer, the Peat Marwick court commented that the client in Sawyer understood and believed that his representation had not been proper in 1981 when he dismissed his lawyer. In contrast, the client in Peat Marwick believed that Peat Marwick’s accounting advice was correct and they proceeded on that advice to challenge the deficiency notice.
In Edwards, client sued counsel for legal malpractice in the drafting of a contract. In 1963 client learned that the contract was probably usurious. Client told counsel, who admitted the error and agreed to correct it without charge. Client did not sue until 1968 raising malpractice as a counterclaim in counsel’s suit against client for fees. Because client knew of the injury in 1963, the counterclaim filed in 1968 was held to be barred by the statute of limitations. In Peat Mairwick, the court emphasized that, unlike Edwards, when its client received the deficiency notice, Peat Marwick had not acknowledged its error. 565 So.2d at 1327.
Client here urges us to apply the reasoning from Peat Marwick to these facts, comparing the letter from the association’s attorney advising him of the claim of lien to the deficiency notice sent by the IRS. Peat Marwick explained that the notice from IRS simply gave client notice of potential malpractice. Hence, the question of malpractice in Peat Marwick could not be established until the Tax Court had ruled on the question of the tax deficiency. In this case, therefore, we conclude that the notice of the claim of lien merely gave client notice that the amendment was only possibly ineffective.
We understand Peat Marwick to draw a distinction between knowledge of actual harm from legal malpractice and knowledge of potential harm. The former begins the limitations period; the latter does not. Legal services, like accounting services, are often subject to differing views among practitioners. Lawyers often disagree with one another on the same transaction. It seems clear to us that Peat Marwick, properly understood, means that the limitations period on claims of legal malpractice should not commence until it is reasonably clear that the client has actually suffered some damage from legal advice or services.
In this case, that means that legal malpractice would not be crystalized until the circuit court ruled that the amendment was invalid. In other words, the injury was not established merely because the association thought the amendment ineffective. There was no redressable harm to client until the court found the amendment to be invalid. See also Spivey v. Trader, 620 So.2d 212 (Fla. 4th DCA 1993) (limitations period for suit against counsel did not begin to run until entry of judgment in proceedings supplementary).
Our agreement with client’s analysis of Peat Marwick does not create an inconsistency with our holding in Roger Zitrin, M.D., P.A. v. Glaser, 621 So.2d 748 (Fla. 4th DCA 1993). In reversing a dismissal on limitations grounds there, we suggested in dicta that Peat Marwick concerned only “litiga-tional malpractice.” We then proceeded to hold, however, that the limitations period on *1137 a legal malpractice claim does not begin to run “until the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury or the negligent act.” [e.o.] 621 So.2d at 749-750. The quoted text was taken directly from Peat Marwick. The legal services in Zitrin involved transactions rather than litigation. Hence, we applied Peat Marwick to transactional malpractice. We can hardly assert today that the Peat Mar-wick holding is applicable only to litigational malpractice.
We expressly hold that, for pleading purposes, the complaint sufficiently alleges that the fact of redressable harm did not occur until the circuit court found the amendment invalid. From the face of the complaint, the statute of limitations did not begin to run until the court invalidated the amendment.
REVERSED.
PARIENTE, J., and WOLF, JAMES R., Associate Judge, concur.